# United States District Court
for
## Middle District of Tennessee

## Superseding Petition for Summons for Offender Under Supervision
### [Supersedes Petition Filed as Docket Entry No. 1764]

Name of Offender: <u>James Russell Norris</u>   Case Number: <u>2:11-00002-20</u>

Name of Sentencing Judicial Officer: <u>Honorable Aleta A. Trauger, U.S. District Judge</u>

Date of Original Sentence: <u>July 11, 2012</u>

Original Offense(s): <u>21 U.S.C. § 846 Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone, Hydrocodone, and Alprazolam</u>

Original Sentence: <u>35 months' custody and 3 years' supervised release</u>

Type of Supervision: <u>Supervised Release</u>   Date Supervision Commenced: <u>March 7, 2014</u>

Assistant U.S. Attorney: <u>Hal McDonough</u>   Defense Attorney: <u>Mike Holley</u>

## PETITIONING THE COURT

<u>X</u>  To Consider Additional Violations/Information.
___  To issue a Summons.
___  To issue a Warrant.

## THE COURT ORDERS:
☐ No Action
☐ The Issuance of a Warrant:
　☐ Sealed Pending Warrant Execution
　　(cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☒ Consideration of Additional Violations/Information. *at 10/27/14 hearing.*
☐ Other

Considered this 24th day of Oct., 2014, and made a part of the records in the above case.

_____
Aleta A. Trauger
U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.
Respectfully submitted,

_____
Brad Bartels
U.S. Probation Officer

Place　　　Cookeville, TN

Date　　　October 24, 2014

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 1764, has been amended as follows:

    <u>Violation No. 1</u> - has been amended to include an additional positive drug test.

    <u>Violation No. 2</u> - has been added to include new criminal behavior.

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall refrain from the unlawful use of a controlled substance.** Since March 25, 2014, Mr. Norris was positive and/or admitted using illegal substances on eleven separate occasions. |

| | |
|---|---|
| March 25, 2014 | tested positive for methamphetamine |
| April 22, 2014 | tested positive for methamphetamine |
| July 2, 2014 | tested positive for methamphetamine, morphine, oxycodone |
| July 7, 2014 | tested positive for methamphetamine |
| July 14, 2014 | tested positive for methamphetamine |
| July 29, 2014 | tested positive for methamphetamine |
| August 7, 2014 | admitted use of methamphetamine |
| August 12, 2014 | admitted use and tested positive for methamphetamine, morphine, and oxycodone |
| August 14, 2014 | admitted use and tested positive for methamphetamine |
| August 18, 2014 | admitted use and tested positive for methamphetamine |
| October 21, 2014 | admitted use and tested positive for morphine; tested postive but denied used of methamphetamine |

On March 25, 2014, Mr. Norris was positive for methamphetamine. When questioned by the probation officer, Mr. Norris adamantly denied using any illegal substance.

On April 22, 2014, Mr. Norris was positive for methamphetamine. Mr. Norris denied using any illegal substance, and was unsure why he would fail the drug test.

On July 2, 2014, Mr. Norris was positive for methamphetamine, opiates, and oxycodone. When questioned by the probation officer, Mr. Norris admitted to injecting methamphetamine on July 1, 2014. Mr. Norris also admitted to taking his prescription oxycodone and Endocet, but stated he took them less than prescribed. Mr. Norris filled a prescription for Endocet on June 5, 2014, and was given 20 pills. On June 10, 2014, he filled a prescription for oxycodone, and was given 30 pills. Both prescription bottles were empty when Mr. Norris was drug tested on July 2, 2014. Mr. Norris stated he took his last pill on July 1, 2014, but was unsure which prescription drug he had taken. Mr. Norris did not have a prescription for morphine.

On July 7, 2014, Mr. Norris was given a random drug test that was positive for methamphetamine. When questioned by the probation officer, Mr. Norris denied new drug use since his last drug test on July 2, 2014. Mr. Norris stated methamphetamine generally remained in his system for approximately five days. The probation officer informed Mr. Norris he admitted to last using methamphetamine six days ago. Mr. Norris again denied new drug use and was unsure why he continued to test positive for methamphetamine.

On July 14, 2014, Mr. Norris reported for 28-day inpatient substance abuse treatment at the New Leaf Recovery Center in Cookeville, Tennessee. As part of the admission process, Mr. Norris was positive for methamphetamine. When questioned by the probation officer, Mr. Norris denied new drug use and stated the positive drug test was a result of taking Prilosec. The probation officer refuted this claim and stated that it was not believed that Prilosec would cause false positives for methamphetamine.

On July 29, 2014, Mr. Norris was positive for methamphetamine. When questioned by the probation officer, Mr. Norris said he had not used methamphetamine over the previous two weeks. Mr. Norris said he missed his vein while injecting methamphetamine in his arm causing a knot to form. He claimed the methamphetamine injected two weeks prior was slowly dispersing in his body, causing him to be positive on this date.

On August 7, 2014, Mr. Norris failed to report for a random drug test. When questioned by the probation officer, Mr. Norris said he had asked his mother to call each night to see if he was randomly selected to take a drug test the following day. Mr. Norris stated his mother forgot to make the call on August 6, 2014. Mr. Norris admitted to using methamphetamine on or about August 5, 2014. Due to Mr. Norris' lack of transportation and the burden it would place on Mr. Norris' mother, the probation officer did not require him to report the following day to produce a urine sample.

On August 12, 2014, Mr. Norris reported to the probation office prior to his admission to Elam. Mr. Norris was positive for methamphetamine, opiates, and Oxycodone. When questioned by the probation officer, Mr. Norris admitted to injecting one to two crushed Roxicet pills, 15 mg each, mixed with methamphetamine, on or about August 11, 2014. Mr. Norris also admitted to taking one 10 mg Opana pill with methamphetamine on or about August 9, 2014. He told the probation officer he continued to use drugs because the treatment facility told him he needed to be "dirty" when he arrived. Mr. Norris elaborated, stating New Leaf removed him from inpatient treatment because he did not meet criteria. The probation officer reminded Mr. Norris that he was positive for methamphetamine when he arrived at New Leaf and that he was not eligible for the program because of his self disclosure. Mr. Norris said he wanted to make sure he would be admitted, so he took some "medicine." When the probation officer asked for clarification regarding "medicine," Mr. Norris said "meth." Mr. Norris reported to Elam after meeting with the probation officer but was denied admission since he failed to obtain a tuberculosis test prior to his arrival date. Mr. Norris was sent to a local clinic to obtain the test and instructed to return to Elam on Thursday, August 14, 2014.

On August 13, 2014, Mr. Norris was contacted by a representative from Elam and given a new admission date of Monday, August 18, 2014. On August 14, 2014, Mr. Norris was positive for methamphetamine. Mr. Norris denied new use of any illegal substance. The probation officer told Mr. Norris to report to the probation office on August 18, 2014, before going to Elam to be admitted to the inpatient substance abuse program.

On August 18, 2014, Mr. Norris reported to the probation office, prior to his arrival at Elam, and was positive for methamphetamine. Mr. Norris admitted to using the illegal substance on or about August 16, 2014. The urine sample was confirmed by the laboratory to be positive for methamphetamine.

On October 21, 2014, Mr. Norris was positive for Oxycodone, opiates, and methamphetamine. Mr. Norris did not produce enough urine to send to the laboratory for confirmation and was told he would have to produce another sample. Mr. Norris was questioned via telephone by the probation officer, and in the presence of U.S. Probation

Officer, Amanda Michele, who was present in the Cookeville office at the time of the drug test. Mr. Norris admitted to consuming one Morphine pill approximately 2-3 days prior to the test, but denied using methamphetamine. After the conversation, Mr. Norris left without producing another sample. Officer Michele called Mr. Norris to confirm he intended to return to the probation office, before 3:00 p.m., to produce an additional urine sample for submission to the laboratory. Mr. Norris said he had a headache and told Officer Michele to submit the sample he had previously provided while at the probation office. Officer Michele explained to him that the first sample did not contain enough urine to obtain results from the laboratory, and she reiterated the importance of Mr. Norris returning to produce another urine sample. He did not return to produce a second sample.

2. **The defendant shall not commit another federal, state or local crime.**
   On October 21, 2014, Mr. Norris reported to the Cookeville probation office for a drug test. During the test, Drug Program Assistant, Ryan Pettit, noticed tape on Mr. Norris' penis. He questioned Mr. Norris about the tape, and Mr. Norris reported that he taped the hole on his penis to keep urine from "leaking" out. Mr. Norris became agitated stating he was having kidney issues and he did not want to wear diapers. He denied attempting to defeat the drug test. U.S. Probation Officer, Amanda Michele, overheard the conversation between Mr. Norris and Mr. Pettit and asked that he, and Mr. Pettit, come out of the restroom so she could discuss the issue with him. When questioned by Officer Michele, Mr. Norris denied attempting to defeat the test in any manner. Officer Michele asked Mr. Norris to remove his jacket and he complied. While Mr. Norris was removing his jacket, a clear tube was revealed from under his jacket. Officer Michele asked Mr. Norris to remove the device and placed on the floor. It consisted of a transparent tube attached to a suction mechanism with tape. The end of the transparent tube had scotch tape attached where it was taped to Mr. Norris' penis. A photograph of the device has been attached to the petition for Your Honor's review.

   Officer Michele questioned Mr. Norris regarding the device. Mr. Norris said he urinated in a "jug" prior to consuming Morphine 2 or 3 days prior to the test to ensure he would pass a drug test. Mr. Norris admitted to putting this urine in the device in an attempt to defeat the drug test. Pursuant to T.C.A. § 39-17-437, it is a Class A misdemeanor for a person to intentionally use, or possess with the intent to use, any substance or device designed to falsify the results of a drug test of that person. As used in this section, "drug test" means a lawfully administered test designed to detect the presence of a controlled substance.

**Compliance with Supervision Conditions and Prior Interventions:**
James Norris is currently unemployed and lives in Jamestown, Tennessee. He was receiving disability benefits prior to his period of incarceration and has reportedly applied to have the benefits reinstated. Mr. Norris began his three-year term of supervised release on March 7, 2014, and his supervision is due to expire on March 6, 2017. Following his release from custody, Mr. Norris was referred to Cumberland Mountain Mental Health in Crossville, Tennessee, for a substance abuse assessment and any recommended treatment. Mr. Norris was not originally recommended for treatment but after his first positive drug test, it was recommended Mr. Norris participate in substance abuse treatment once per month.

On April 2, 2014, a report was submitted to the Court regarding a positive drug test on March 25, 2014. The probation officer warned Mr. Norris of the possible ramifications, legally and personally, of a return to the use of illegal substances. Mr. Norris was instructed not to use any illegal drugs and to actively participate in substance abuse treatment.

On April 8, 2014, Mr. Norris was given a drug test that was negative for all drugs tested. On April 21, 2014, Mr. Norris failed to report for a random drug test. The probation officer called Mr. Norris and told him to report to the Cookeville office on April 22, 2014.

After the positive drug test on April 22, 2014, Mr. Norris again denied using any illegal substances. Mr. Norris said he was unsure why he tested positive for methamphetamine. The probation officer discussed increasing substance abuse treatment with Mr. Norris. The probation officer reiterated the importance of Mr. Norris remaining drug free and encouraged him to make better decisions.

On April 30, 2014, the probation officer conducted a drug test at Mr. Norris' residence, and the results were negative for all drugs tested. The probation officer praised Mr. Norris for abstaining from illegal substances, but also discussed increasing Mr. Norris' substance abuse treatment to ensure he remained drug free. Mr. Norris agreed to participate in the additional treatment sessions, stating he could use the help. Mr. Norris finally admitted to using methamphetamine causing him to test positive on April 2, 2014, but continued to deny new use prior to his second positive test on April 22, 2014.

On May 5, 2014, a report was submitted to the Court regarding a positive drug test on April 22, 2014. As a result of Mr. Norris' drug use, his substance abuse treatment was increased to twice per month. The probation officer took into consideration Mr. Norris' lack of reliable transportation and did not request additional treatment beyond twice monthly. Mr. Norris was told new drug use could possibly result in admission to an inpatient substance abuse treatment program.

A report was submitted to the Court on July 18, 2014, reporting additional positive drug tests on July 2, July 7, and July 14, 2014. As a result of his positive drug tests on July 2, and July 7, 2014, Mr. Norris' outpatient substance abuse treatment was increased to once per week until he was admitted into the 28-day inpatient substance abuse treatment program at the New Leaf Recovery Center in Cookeville, Tennessee.

On July 16, 2014, the probation officer was contacted by Tammy Holmes, the director of New Leaf, who stated Mr. Norris did not meet inpatient criteria according to the Addiction Severity Index and would therefore be discharged this date. According to Ms. Holmes, Mr. Norris' self disclosure involving the frequency of use prevented him from being eligible for continued inpatient treatment. Mr. Norris' self reported frequency of drug use was not accurate.

On July 17, 2014, the probation officer called Mr. Norris and provided him with contact information for Samaritan Recovery in Nashville, Tennessee. Mr. Norris called Samaritan Recovery and was informed he did not meet the criteria needed to be admitted to the inpatient substance abuse treatment program. The probation officer provided Mr. Norris with the contact information to the Lloyd C. Elam Mental Health Center in Nashville, Tennessee. Mr. Norris called the Elam Center and was scheduled for an intake assessment on August 5, 2014. The probation officer told Mr. Norris to continue participating in his weekly outpatient substance abuse treatment until he was admitted into the inpatient substance treatment program at Elam. The probation officer warned Mr. Norris that any additional drug use would be reported to the Court and may result in revocation of his supervised release.

As a result of his positive drug test on July 29, 2014, the probation officer reprimanded Mr. Norris for his continued drug use and disregard for the conditions of his supervision. The probation officer told Mr. Norris to stop making excuses and blaming others for his poor choices. Mr. Norris was encouraged to seriously reflect on his behavior regarding drug use prior to entering inpatient substance abuse treatment at Elam. Mr. Norris described himself as a "junkie" and said he would fully participate in his intake assessment on August 5, 2014, at Elam.

A report was submitted to the Court on August 5, 2014, reporting an additional positive drug test. Mr. Norris completed his intake assessment at Elam and was told his estimated wait for admission was 2 to 3 weeks. The probation officer reminded Mr. Norris to continue attending weekly outpatient substance abuse treatment until he was admitted into Elam. The probation officer reminded Mr. Norris to keep reporting for random drug testing and told him not to use any illegal substances.

As a result of the admission of new drug use on or about August 5, 2014, the probation officer advised Mr. Norris to be responsible for his own supervision requirements and to stop requesting his mother to make nightly calls regarding random drug testing. The probation officer told Mr. Norris he was not complying with the Court's direction to not use any illegal drugs, and any additional drug use could result in the probation officer requesting Mr. Norris be detained until he reports for inpatient substance treatment at Elam.

After the positive drug tests on August 7, August 12, and August 14, 2014, the probation officer told Mr. Norris that the period of waiting prior to being admitted to Elam was not a time to binge on illegal drugs. Mr. Norris said he would do what he had to do in order to be admitted. The probation officer reminded Mr. Norris that his continued use of illegal drugs was a violation of his supervised release, and he was deliberately disobeying the instructions of the Court. The probation officer told Mr. Norris to actively participate in outpatient treatment and not to use any illegal drugs. Mr. Norris reported to Elam as scheduled on August 18, 2014.

A petition was submitted to the Court on August 27, 2014, reporting Mr. Norris had tested positive for illegal drugs on ten separate occasions since March 25, 2014. A summons was issued for Mr. Norris, who reported on September 16, 2014, after his successful completion and discharge from Elam. The revocation hearing originally scheduled for September 29, 2014, was rescheduled to October 27, 2014, to allow Mr. Norris the opportunity to prove he had the ability to apply strategies learned during inpatient treatment to avoid using drugs.

As a result of the positive drug test on October 21, 2014, the probation officer told Mr. Norris it appeared he had not benefited from the opportunity to attend inpatient substance abuse treatment. The probation officer elaborated, stating Mr. Norris previously expressed a commitment to avoid using drugs, but was not serious about his commitment. He explained to Mr. Norris that drug use is an addiction, but Mr. Norris failed to be truthful about his drug use precluding him from fully benefiting from treatment strategies learned during substance abuse treatment. The probation officer also reprimanded Mr. Norris for attempting to defeat the drug test and undermining the authority of the Court. Mr. Norris repeatedly said "do what you got to do."

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
It is respectfully recommended that these additional violations be considered at the revocation hearing scheduled for October 27, 2014. This matter has been reported to Assistant U.S. Attorney Hal McDonough, who concurs with the recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. JAMES RUSSELL NORRIS, CASE NO. 2:11-00002-20

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** IV

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003    PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years (Class C Felony) 18 U.S.C. § 3583(e)(3) | 6-12 months U.S.S.G. § 7B1.4(a) | 12 months |
| SUPERVISED RELEASE: | 3 years less any term of imprisonment 18 U.S.C. § 3583(h) | 1-3 years U.S.S.G. § 5D1.2(a)(1) | 18 months |

18 U.S.C. § 3583(g)(4) If the defendant, as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision. U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted,

_____
Brad Bartels
U.S. Probation Officer

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer



# VIOLATION WORKSHEET

1. **Defendant** James Russell Norris

2. **Docket Number** *(Year-Sequence-Defendant No.)*  0650 2:11CR00002 - 20

3. **District/Office**  Middle District of Tennessee

4. **Original Sentence Date**  07 / 11 / 2012
                                   month   day   year

5. **Original District/Office**
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)*

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Refrain from the unlawful use of a controlled substance | C |
   | Shall not commit another federal, state, or local crime | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*     C

9. **Criminal History Category** *(see §7B1.4(a))*     IV

10. **Range of Imprisonment** *(see §7B1.4(a))*     6-12 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☒ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** James Russell Norris

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) _____     Community Confinement _____

    Fine($) _____            Home Detention _____

    Other _____              Intermittent Confinement _____

13. **Supervised Release**

    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: 1 _____ to 3 _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a
    sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002